IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cr-20027 |
| ) | |
| ROBERT V. WALKER, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant Walker's Motion for Compassionate Release (ECF No. 53) and the Government's Response (ECF No. 60). For the reasons set forth below, Defendant's Motion is DENIED.

#### BACKGROUND

On December 15, 2006, Defendant was sentenced for a term of 188 months in the Bureau of Prisons (BOP) with 3 years of supervised release. ECF No. 25 at 3. The original offense was Attempted Bank Robbery in violation of 18 U.S.C. §2113(a) out of the District of Kansas in Topeka, Kansas. *Id.* at 3-4. The BOP moved Defendant to the Residential Reentry Center (RRC) at the Mirror, Inc., Kansas City, Kansas, on June 13, 2019. *Id.* at 4. Defendant was scheduled to be released from the BOP on August 22, 2019, via good conduct time release. *Id.*

On August 21, 2019, Defendant left RRC under an approved itinerary with a reporting time of 6:45 pm the same day. *Id.* Defendant failed to return to the facility. *Id.* The facility attempted to contact him and discovered Defendant had taken all of his belongings from his room. *Id.* On August 23, 2019, the District of Kansas issued a warrant for the Defendant's arrest for the offense of Escape due to the Defendant's failure to return to the RRC as required. *Id.* The Defendant was

indicted in United States District Court, District of Kansas, in violation of 18 U.S.C. 751(a) on October 23, 2019. *Id.* at 3. Defendant was then arrested by the United States Marshals on March 2, 2020, in Urbana, Illinois. *Id.* at 4.

Pursuant to the Federal Rule of Criminal Procedure Rule 20, the Defendant agreed to transfer the Escape case to the Central District of Illinois in 20-CR-20027. *Id.* at 3. His supervised release revocation proceedings were also transferred to the Central District of Illinois in 20-CR-20031. *Id.* On March 9, 2021, this Court sentenced Defendant to concurrent 14-month sentences in each case. ECF No. 51 at 3. He is currently serving his sentence at Forrest City Low FCI, in Forrest City, Arizona. ECF. No. 57.

On April 13, 2021, Defendant filed a *pro se* Motion for Compassionate Release. ECF No. 53. In this motion, Defendant asked the Court to release him to home confinement for the remainder of his sentence and to reduce his sentence. *Id.* at 1-2. The Court appointed the Federal Public Defender's Office to represent him, and on May 13, 2021, appointed counsel filed a Notice of Intent Not to File Amended Motion for Compassionate Release. ECF No. 58. On May 28, 2021, the Government filed its Response in opposition to compassionate release. ECF No. 60. This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. "Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different

path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

Defendant urges the Court to find extraordinary and compelling reasons exist for his compassionate release based upon the health risks he faces due to the coronavirus and the steps that he has taken towards self-rehabilitation. ECF No. 53. Additionally, he asks the Court to remove him from FCI Forrest City to home supervision. *Id.* The Government argues that Defendant failed to exhaust his administrative remedies and is otherwise not eligible for compassionate release. ECF No. 60. The Government also alleges that this Court lacks jurisdiction to place Defendant in home supervision. *Id.*

### A. Exhaustion Requirement

The Government argues that Defendant failed to exhaust his administrative remedies, requiring that the Court dismiss this case. The Government states that Defendant failed to fulfill any of the requirements set forth by 18 U.S.C. § 3582(c)(1)(A), including an initial request to BOP that was later denied, any appeals, or a 30-day lapse between making the request of the warden and filing his motion. Thus, the Government raises an affirmative defense via *United States v. Gunn*, 980 F.3d 1178, 1179-81 (7th Cir. 2020) (holding that failure to exhaust administrative remedies is an affirmative defense within the context of § 3582(c)(1)(A)).

Defendant makes no mention of the exhaustion requirement in his Motion and does not provide any documentation to suggest that he fulfilled the exhaustion requirement. This exhaustion requirement is a mandatory claim-processing rule. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020), *petition for cert. filed*, (U.S. Oct. 7, 2020) (No. 20-5997); *United States v. Alam*,

960 F.3d 831, 833–34 (6th Cir. 2020). Accordingly, the Court finds that Defendant has failed to fulfill the exhaustion requirement of a Motion for Compassionate Release. This reason alone would require the Court to deny Defendant's Motion. However, in the interest of conserving judicial resources, the Court will also address Defendant's eligibility for compassionate release.

### B. Eligibility for compassionate release related to Defendant's health.

Defendant cites a number of serious health conditions to support his eligibility for compassionate release, including: substance abuse dependency, schizophrenia, bipolar disorder, depression, anxiety, acute asthma, seizures, arthritis, heart disease, high blood pressure, diabetes, sleep apnea and a weak respiratory system.[1] According to the CDC, five of these conditions (including substance abuse, asthma, heart disease, high blood pressure, and diabetes) can put Defendant at a higher risk of getting severely ill from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (*last accessed* June 11, 2021). Alone, these health conditions may prove Defendant has an "extraordinary and compelling reason" for compassionate release. USSG § 1B1.13, cmt. n.1(A)(ii)(I). However, as the Government points out, Defendant has already received a COVID-19 vaccination, which is a form of self-care that the FDA reports is "effective to prevent such serious or life-threatening disease or condition that can be caused by SARS-CoV-2." FDA Decision Memorandum – Janssen, https://www.fda.gov/media/146338/download. Because Defendant is fully vaccinated, his underlying health conditions, alone, are insufficient to establish extraordinary and compelling reasons justifying early release. *See United States v. Harrison,* No. 4:16-CR-40073-SLD, 2021 WL 2021440 at *3 (C.D. Ill. May 20, 2021) ("In light of his vaccination and the low numbers of cases at USP Lompoc currently, the Court finds that

---

[1]Defendant provided a handwritten document with various abbreviations and misspellings. The Court made its best guess as to the health conditions that Petitioner intended to identify.

Defendant has not shown extraordinary and compelling reasons for release exist based on the COVID-19 pandemic."); *see also United States v. Singh*, ⎯⎯ F. Supp. 3d ⎯⎯ No. 4:15-CR-0028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) ("[T]he Court concludes that [Defendant]'s recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with [Defendant]'s underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release."); *United States v. Grummer*, ⎯⎯ F. Supp. 3d ⎯⎯, Case No.:08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions." (citing additional Ninth Circuit district court cases)).

Additionally, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." *See e.g., United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). When the Government submitted its Response on May 28, 2021, Forrest City Low FCI had no inmates with active cases of COVID-19 and one reported active case among staff members. ECF No. 60 at 13. As of June 15, 2021, that statistic remains steady with no infected inmates and one active case among staff members. *See* https://www.bop.gov/coronavirus/ (*last accessed* June 15, 2021). The Government further outlined steps taken by BOP to prevent the spread of the disease. Given the recent sustained low positivity rate at Forrest City Low FCI, these steps by BOP have been successful in curbing the spread of COVID-19 at its facilities. Accordingly, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

### C. The Court is unable to conclude that Defendant would not be a danger to his community.

Before releasing a defendant, the Court gives great weight to whether a defendant is a danger to the community. *See* U.S.S.G § 1B1.13. To determine whether Defendant's claims merit release, the Court evaluates Defendant's situation under the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1). The Court starts with Defendant's conduct in the current case and past criminal history. Defendant's escape sentence was incurred while serving a sentence for Attempted Robbery, which involved the use of violence. The use of violence in this case indicates potential danger to the community if Defendant is released early. Additionally, the fact that Defendant committed a crime while serving his sentence for another weighs heavily against him.

Furthermore, Defendant has only served a few months of concurrent fourteen-month terms. Excusing Defendant from serving the majority of the sentences for these crimes would not promote respect of the law. *See* 18 U.S.C. § 3553(a)(2)(A); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (upholding district court's denial of compassionate release based on time remaining in petitioner's sentence).

Finally, the U.S. Probation Office finds Defendant's proposed release plan to be unsuitable. Defendant plans to live with his wife if released. Notably, his wife advised Probation that she does not wish Defendant to live with her if he was released. ECF No. 57. Defendant's wife identified him as emotionally and physically abusive and alleges that she relapsed on cocaine and was arrested for a felony drug charge as a result of Defendant residing with her during his previous supervised release. A criminal records check run by Probation revealed that Defendant's wife has a current pending felony drug charge in Champaign County. *Id.* Allegations of prior abuse against Defendant, coupled with his wife's unwillingness to reside with him if released and the

8

recommendations of the U.S. Probation Office, indicate that Defendant's proposed release plan is unsuitable.

Given the Defendant is currently vaccinated and housed in a low-risk facility, has previously proven himself untrustworthy under supervised release, and has an unsuitable proposed release plan, the Court is persuaded that Defendant is not a suitable candidate for compassionate release.

**D. Jurisdictional requirement to place Defendant in home confinement.**

Defendant also requests to be transferred to home confinement. As the Government notes, this Court lacks the jurisdiction required to transfer the Defendant from his current facility. The Supreme Court has previously emphasized that the BOP has "plenary control" over an inmate's placement. *Tapia v. United States*, 564 U.S. 319, 331(2011); *see United States v. Ko*, 739 F.3d 558, 561 (10th Cir. 2014) (explaining that an inmate remains under the Bureau's custody during home confinement). Only the BOP may decide to transfer the Defendant to home confinement. 18 U.S.C.A. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment…."). Thus, this Court does not have jurisdiction to place Defendant in home confinement. If Defendant wishes to request home confinement from BOP pursuant to the newly expanded CARES Act, he may do so.

## CONCLUSION

For the reasons set forth above, it is ORDERED that Defendant's Motion (ECF No. 53) is DENIED.

ENTERED this 17th day of June, 2021.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
